UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

BRYAN L.,

      **Plaintiff,**

  v.                                          Civil Action 2:21-cv-2835
                                                              Judge Edmund A. Sargus, Jr.
                                                              Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL**
**SECURITY,**

      **Defendant.**

### REPORT AND RECOMMENDATION

Plaintiff, Bryan L. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Social Security Period of Disability benefits, Disability Insurance benefits, and Supplemental Security Income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 16), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

I.      BACKGROUND

Plaintiff filed applications for Title II Period of Disability and Disability Insurance Benefits, and for Title XVI Supplemental Security Income Benefits, on February 13, 2013, and May 31, 2013, respectively, alleging a disability onset date of June 9, 2010. (R. 286–94, 1266.) After Plaintiff's application was denied at the initial and reconsideration levels, Administrative

Law Judge Jeffrey Hartranft issued a decision denying benefits on July 23, 2015. (R. 160–82.) However, the Appeals Council ordered remand on July 28, 2016, because ALJ Hartranft failed to weigh certain treating source opinions. (R. 191–92.) ALJ Hartranft issued another decision denying benefits on November 15, 2017. (R. 15–33.) After the Appeals Council denied review, Plaintiff commenced an action in this Court, which remanded the case due to ALJ Hartranft's assigning great weight to a certain medical source opinion, but failing to adopt (or explain his reasons for failing to adopt) certain opined limitations therein. (*See* Case No. 2:18-cv-623, ECF Nos. 14, 17.)

A new hearing was held before Administrative Law Judge Deborah Sanders (the "ALJ") on November 23, 2020, at which Plaintiff, represented by counsel, appeared and testified. (R. 1344–78.) A vocational expert, Melissa Hennessey, also appeared and testified at the hearing. (*Id.*) On February 2, 2021, the ALJ issued a decision denying benefits. (R. 1266–1335.) Instead of appealing to the Appeals Council, Plaintiff elected to file another Complaint with this Court, again seeking judicial review of the ALJ's decision pursuant to 20 C.F.R. § 404.984(d). (ECF No. 1.)

Plaintiff sets forth two contentions of error: (1) the ALJ improperly evaluated the opinions of Plaintiff's treating providers, Shelly Dunmyer, M.D., and Kristen Burgess, C.N.P., and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. (Pl.'s Statement of Errors 9–17, ECF No. 15.)

## II. THE ALJ'S DECISION

The ALJ issued her decision on February 2, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 1266–1335.) At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff did not engage in substantial gainful activity during since his alleged onset date of June 9, 2010. (R. 1270.) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative changes of the cervical and lumbar spine, and sacroiliac joints, obesity, and bipolar, depressive, and anxiety disorders. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix. (*Id.* at 1277.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). He can stand and/or walk up to 20 minutes at a time,

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

3

>then must be given one to two minutes to change positions. Balancing is limited to no more than frequently. Climbing ramps and stairs, crawling, crouching, kneeling, and stooping, are each limited to no more than occasionally. He cannot climb ladders, ropes, and scaffolds, and must avoid all exposure to workplace hazards such as dangerous machinery and unprotected heights. Mentally, the claimant retains the capacity to perform simple repetitive routine tasks involving only simple work related decisions with few if any workplace changes, and no production rate pace and strict production quotas. He can interact occasionally with members of the general public, but not in a customer service capacity, and can occasionally interact with co-workers and supervisors.

(R. 1287.) At step four, relying on testimony from the VE, the ALJ found that Plaintiff was unable to perform his past relevant work as a corrections officer, security guard, or material handler. (*Id.* at 1332–33.) At step five, the ALJ determined that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as inspector, final assembler, surveillance system monitor, and document preparer. (*Id.* at 1334.) The ALJ therefore concluded that Plaintiff was not under a disability at any time since the alleged disability onset date of June 9, 2010. (*Id.* at 1335.)

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

### IV. ANALYSIS

Plaintiff raises two issues in his Statement of Errors (ECF No. 15): (1) the ALJ erred in evaluating the opinion of his treating nurse practitioner and treating physician; and (2) the ALJ lacked authority to issue a decision because the statute governing removal of the Commissioner of Social Security is unconstitutional. The undersigned considers each contention of error in turn.

**A.  The ALJ did not err in evaluating the opinion of Plaintiff's treating providers.**

**1.  Standards for Evaluating Treating Source Opinions**

For claims filed before March 27, 2017, the ALJ's consideration of medical source opinions is governed by 20 C.F.R. § 416.927. The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c). Where a treating source's opinion is submitted, the ALJ generally gives deference to it "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

5

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical filings alone . . . ." 20 C.F.R. § 416.927(c)(2); *Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(c)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors-namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source-in determining what weight to give the opinion.

*Id*. Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(c)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician

6

> rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under *Blakley* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(d). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

    **2.**    **Opinion of Shelly Dunmyer, M.D., and Kristen Burgess, C.N.P.**

Shelly Dunmyer, M.D., and Kristen Burgess, C.N.P., treated Plaintiff over the period of May 30, 2014, through July 24, 2017. (*See* R. 874, 895, 1178–82, 1185–1200, 1206–35, 1528.) Treatment records reflect that Dr. Dunmyer and Ms. Burgess treated Plaintiff only for sore throat, an influenza vaccine, and low testosterone until July 24, 2017, when Plaintiff saw Ms. Burgess for "a disability physical [ ] for back pain" and for pain in both shoulders. (R. 1255.) Ms. Burgess diagnosed Plaintiff with chronic low-back pain with bilateral sciatica and ordered an x-ray of the lumbar spine, although results from this imaging do not appear in the record. (*Id.* at 1255–56.) Ms. Burgess also recommended a physical therapy evaluation. (*Id.*) Ms. Burgess's

7

July 24, 2017 progress note indicates that she performed a physical examination, but her notes are limited to the areas of constitutional, eyes, cardiovascular, neurological, skin, psychiatric, and vitals. (*Id.*) That is, there is no indication that Ms. Burgess objectively assessed Plaintiff's back pain, tenderness, range of motion, or strength. The record contains no further treatment records from Ms. Burgess or Dr. Dunmyer following this visit.

On the same day as Plaintiff's last visit, July 24, 2017, Ms. Burgess completed a Physical Medical Source Statement. (R. 1246–49.) Therein, Ms. Burgess listed Plaintiff's symptoms as "low back pain with sciatica," stating that he has "low back pain, numbness in legs with burning—gets if trying to walk more than 100 yards, cannot lift anything." (R. 1246.) When asked to "[i]dentify the clinical findings and objective signs," Ms. Burgess wrote, "getting x-rays and PT [physical therapy]." (*Id.*) Ms. Burgess further stated that Plaintiff "[d]oesn't want to take medication. PT was years ago and it didn't help." (*Id.*) Ms. Burgess opined that Plaintiff could walk one city block without rest or severe pain, could sit for 30 minutes at a time, could stand for 30 minutes at a time, and could sit and stand/walk for less than 2 hours total in an 8-hour working day. (*Id.* at 1247.) She further opined that Plaintiff would need to be able to shift positions at will from sitting, standing, or walking, that he would need a 5-minute walk every 30 minutes, and would need an unscheduled 15-minute break every hour. (*Id.*) Additionally, Ms. Burgess opined that Plaintiff could lift and carry less than 10 pounds occasionally, 10 pounds rarely, and could never lift and carry any heavier weights; that Plaintiff could rarely twist, crouch/squat, or climb stairs and could never stoop (bend) or climb ladders; and that Plaintiff's ability to grasp, turn, or twist objects, make fine manipulations, reach in front of his body, or reach overhead were all limited to 80% of the time during an 8-hour working day. (*Id.* at 1248.) When asked whether Plaintiff's impairments as demonstrated by signs, clinical findings, and

8

laboratory or test results were reasonably consistent with her opined functional limitations, Ms. Burgess left both the "yes" and "no" boxes blank, and wrote, "waiting on testing." (*Id.* at 1249.) Finally, Ms. Burgess estimated that Plaintiff was likely to be absent from work as a result of his impairments about four days per month. (*Id.*) Two days later, on July 26, 2017, Dr. Dunmyer wrote, "[a]gree with above assessment" and signed her name on the last page of Ms. Burgess's Physical Medical Source Statement. (*Id.*)

      The ALJ explained that she gave Ms. Burgess's and Dr. Dunmyer's opinions "partial weight" because they were inconsistent with other "entirely or mainly normal objective medical evidence and examination findings." (R. 1298.) As noted by the ALJ, "[t]he claimant denied and did not demonstrate chronic back pain at different times" and that Plaintiff often "reported no, 0/10 back pain, and mild, 1/10–4/10 back pain." (*Id.*, citing R. 437, 441, 465, 480, 485, 499, 504, 509, 514, 530, 535, 541, 550, 564, 571, 599, 612, 631, 655, 674, 704, 706, 708, 881.) Moreover, the ALJ noted that Ms. Burgess's and Dr. Dunmyer's opinions were inconsistent with Plaintiff's own testimony and "activities of daily living in excess of his subjective complaints." (R. 1298.) For instance, in contradiction to the restrictions Ms. Burgess and Dr. Dunmyer placed on Plaintiff's use of his hands to grasp, twist, turn, make fine manipulations, and reach, Plaintiff has reported or testified that he "performs grooming, hygiene, and personal care activities independently," "regularly consumes and prepares meals, and performs household chores and cleaning such as dishes, laundry, and yardwork," and "reports caring for three children as a stay at home parent since he stopped working while his wife works, including feeding, bathing, getting up and off to school, and playing with them." (R. 1200–1300, citing R. 371–72, 541, 644, 700, 715, 897, 901, 904, 916, 1358–59.)

9

The undersigned finds no error with the ALJ's consideration and weighing of Dr. Dunmyer's and Ms. Burgess's opinion. First, the ALJ incorporated several limitations in the RFC that were at least as restrictive as those opined by Dr. Dunmyer and Ms. Burgess, including that Plaintiff can stand for at most 20 minutes at a time, can never lift or carry more than 10 pounds,[3] and can never climb ladders. (R. 1287.) As to Dr. Dunmyer's and Ms. Burgess's remaining opinions, the ALJ articulated the weight she afforded the opinions and properly declined to afford them controlling weight on the grounds they were inconsistent with other record evidence. Namely, Dr. Dunmyer's and Ms. Burgess's opinions that Plaintiff, due to his back pain, could not sit for more than 30 minutes and would require frequent, unscheduled breaks are inconsistent with Plaintiff's frequent reports of no or mild back pain. Moreover, Dr. Dunmyer's and Ms. Burgess's opined limitations on Plaintiff's use of his upper extremities are inconsistent with Plaintiff's reported activities of daily living, including household chores, yardwork, and caring for his children. The ALJ therefore appropriately declined to adopt their limitations or give their opinions controlling weight pursuant to 20 C.F.R. § 404.1527(c)(2).

Plaintiff contends that the record contains other evidence that supports greater restrictions. However, Plaintiff also acknowledges that the ALJ "cited to a laundry list of seemingly normal findings that supported her opinion" and conceded that those findings "may be accurate." (Pl.'s Statement of Errors 11,13, ECF No. 15.) And "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

---

[3] The ALJ limited Plaintiff to "sedentary work," which is defined, *inter alia*, as "involv[ing] lifting no more than 10 pounds at a time." 20 C.F.R. §§ 404.1567(a), 416.967(a).

B.     **Plaintiff's constitutional claim lacks merit.**

Plaintiff's remaining argument turns on the constitutionality of the statute governing the Commissioner of Social Security's removal from office. As an initial matter, Plaintiff's constitutional claim is procedurally improper. Plaintiff's Complaint does not include any constitutional claims. (*See* ECF No. 4.) Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, however, that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a complaint need not provide "detailed factual allegations," at a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell v. Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Here, the United States Supreme Court case upon which Plaintiff bases his constitutional claim was decided on June 20, 2020. Yet Plaintiff gave no notice, let alone fair notice, of his constitutional claim in his May 27, 2021 Complaint. *See John R. v Comm'r of Soc. Sec.*, Case No. C20-6176-MLP, 2021 WL 5356719, *7 (W.D. Wash. Nov. 16, 2021) (finding that a plaintiff failed to comply with Rule 8 by failing to plead a separation of powers claim in complaint seeking judicial review of Commissioner's decision to deny benefits); *Shannon R. v. Comm'r of Soc. Sec.*, Case No. C21-5173, 2021 WL 5371394, at * 6–7 (Nov. 18, 2021) (same). For that reason, Plaintiff failed to comply with Rule 8 such that his constitutional claim is not properly before the Court. Nevertheless, as explained below, Plaintiff's constitutional claim would fail on the merits.

Plaintiff relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S.Ct. 2183 (2020). In *Seila Law*, the United States Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by

11

the President. *Id.* at 2197. Because 42 U.S.C. § 902(a)(3), the statute governing the Commissioner of Social Security's removal, contains a similar restriction on the President's ability to remove the Commissioner except for cause, Plaintiff contends that § 902(a)(3) also unconstitutionally violates the separation of powers. As a result, Plaintiff argues, "[t]he ALJ and Appeals Council judges here adjudicated the plaintiff's disability claim under the delegated authority of a Commissioner who had no constitutionally valid legal authority to delegate." (Pl.'s Reply 6, ECF No. 19.)

However, even assuming that § 902(a)(3)'s removal provision is unconstitutional, remand is not necessarily required. In *Collins v. Yellen*, 141 S. Ct. 1761 (2021), decided the year after *Seila Law*, the Supreme Court considered a similar statute governing removal of Directors of the Federal Housing Finance Agency ("FHFA"). The *Collins* majority held that "[a]lthough the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [ ] as void." *Id.* at 1787 (emphasis in original); *see also id.* at 1788, n.23 ("Settled precedent also confirms that the unlawfulness of [a] removal provision does not strip the Director of the power to undertake the other responsibilities of his office[.]" (citing *Seila Law*, 140 S.Ct. at 2207–2211)). Instead, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm" flowing from the unconstitutional removal clause. *See id.* at 1788–89 (remanding for further proceedings to determine whether compensable harm to Plaintiff occurred due to the President's inability to remove a Director of the Federal Housing Finance Agency except for cause).

12

Here, Plaintiff has made no showing of any possible compensable harm flowing from § 902(a)(3). Nor is it likely Plaintiff could, because the President's choice of Social Security Commissioner has very little impact on the result of any particular ALJ or Appeals Council decision. *Cf. Collins*, 141 S.Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Indeed, courts across the country have uniformly concluded that the allegedly unconstitutional nature of § 902(a)(3) does not require remand. *See*, *e.g.*, *Crawford v. Commissioner of Social Security*, No. 2:21-CV-726, 2021 WL 5917130, at *8 (S.D. Ohio Dec. 14, 2021); *Rhouma v. Comm'r of Soc. Sec.*, No. 4:20-CV-2823, 2021 WL 5882671, at *11 (N.D. Ohio Dec. 13, 2021); *Lisa Y. v. Comm'r of Soc. Sec.*, ___ F. Supp. 3d ___, No. C21-5207-BAT, 2021 WL 5177363, at *5 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358-KDB, 2021 WL 4998397, at *3 (W.D.N.C. Oct. 27, 2021); *Alice T. v. Comm'r Soc. Sec.*, No. 8:21CV14, 2021 WL 5302141, at *18 (D. Neb. Nov. 15, 2021); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630-GPC(BLM), 2021 WL 5634177, at *3 (S.D. Cal. Dec. 1, 2021). The undersigned finds the reasoning of these cases persuasive and reaches the same result here.

## V. DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

> /s/ *Chelsey M. Vascura*
> CHELSEY M. VASCURA
> UNITED STATES MAGISTRATE JUDGE